**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-305 |
| | ) | Judge Nora Barry Fischer |
| DONTEZ PEOPLES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

In this case, Defendant Dontez Peoples has been charged with committing numerous violations of his supervised release and was ordered detained by now retired U.S. Magistrate Judge Cynthia Reed Eddy following a hearing on March 7, 2024. (Docket No. 68). Presently before the Court are Defendant's Motion to Revoke Order of Detention, (Docket No. 81), his Brief in Support, (Docket No. 82), the Government's Response in Opposition, (Docket No. 84), and Defendant's Reply, (Docket No. 86). The record before the Court includes a transcript of the detention hearing and the evidence presented during same, including the criminal complaints and affidavits for the charges underlying the supervised release violations and the testimony of Allegheny County Police Detective Zachary Miller. (Docket No. 80). The Court is also aware that Defendant was subsequently indicted on November 19, 2024 at Criminal No. 24-260 and charged with one count of possession with intent to distribute 40 grams or more of fentanyl and quantities of cocaine and cocaine base.[1] (Crim. No. 24-260, Docket No. 1). He waived a detention hearing in that matter and has been ordered detained pending trial. (Crim. No. 24-260, Docket No. 16). After careful consideration of the parties' submissions and having conducted a *de novo* review of

---

[1]     The Court takes judicial notice of the filings at Criminal No. 24-260, which is also assigned to this Court. *See McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009).

the detention order issued by Magistrate Judge Eddy, and for the following reasons, Defendant's Motion [81] is DENIED.

As the parties are well familiar with the facts of this matter, the Court initially turns to the controlling legal standards. Rule 32.1(a)(6) governs release or detention pending supervised release revocation proceedings and provides that "[t]he magistrate judge may release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings. The burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(6). Section 3145(b) provides that a person ordered detained by a U.S. Magistrate Judge may file a motion to revoke the detention order before the District Court. 18 U.S.C. § 3145(b). A District Judge reviews the decision of the U.S. Magistrate Judge granting or denying bond *de novo*. *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *see also* 18 U.S.C. § 3145. The evidentiary record as to the issue of detention was fully developed before Magistrate Judge Eddy and "[t]his court may make its independent determination" on the issue of detention "based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, Crim. No. 09-150, 2009 WL 2038148, at *1 (W.D. Pa. Jul. 8, 2009) (quoting *United States v. Farris*, 2008 WL 1944131, at *7 (W.D. Pa. May 6, 2008)). Since Defendant has not proffered any additional evidence which would support his requested release on bond and is subject to the detention order at Criminal No. 24-260, this Court does not believe holding a detention hearing is necessary. (*See* Docket Nos. 82; 86)

At the underlying bond proceedings, Magistrate Judge Eddy found that the Defendant had not "established by clear and convincing evidence that he wouldn't flee or…pose a danger to the community." (Docket No. 80 at 27). Specifically, she pointed to Defendant's alleged drug

trafficking, his possession of illegal substances and firearms, and his frequent flight from police, including during his most recent arrest, as reasons counseling against his release pending a supervised release revocation proceeding. (*Id*.).

Defendant now argues that he established that he is neither a flight risk nor a threat to the community or any other person. (Docket No. 82). He contends that he is not a "serious flight risk" because his flight was brief and law enforcement observed him at a known address before detaining him without incident. (*Id*.). Defendant suggests that the evidence is insufficient to demonstrate that he is a safety threat as Detective Miller did not see him possess a firearm, engage in any "hand-to-hand" drug transactions, commit other activities tied to drug trafficking, or discover a firearm in his possession when he was arrested. (*Id*.). The Government counters that Defendant has failed to meet his burden in proving that he is not a flight risk or safety threat.[2] (Docket No. 84).

In this Court's estimation, Magistrate Judge Eddy correctly concluded that Defendant failed to demonstrate by clear and convincing evidence that he is neither a flight risk nor a danger to the community. *See* Fed. R. Crim. P. 32.1(a)(6). As the Government points out, Defendant did not produce any independent evidence in an effort to meet his burden that he was not a flight risk or safety threat, instead opting to cross-examine one of the Government's two witnesses. (Docket No. 80). Following the controlling standards set forth above, it appears to the Court that the record sufficiently establishes that Defendant should remain detained pending a revocation proceeding. *See id.*

---

[2]    The Government also argues that Defendant has waived district court review of Magistrate Judge Eddy's determination since he waited nearly 10 months to file his motion. (Docket No. 84). Since the Government concedes that the Court has discretion to consider the Motion's merits, it does. *See United States v. Curtis Simon,* Crim. No. 18-82, Docket No. 152.

Having carefully considered the parties' arguments and the evidence of record, the Court finds that Defendant did not meet his burden to show by clear and convincing evidence that he is not a danger to the community based on his alleged possession of firearms and illegal narcotics while on bond, as well as his propensity to commit crimes and violate court-imposed conditions of release.

> As the Court has held many times, drug trafficking, […] poses [a] serious danger to the community. *See, e.g., United States v. Porter*, 442 F. Supp. 3d 903, 907 (W.D. Pa. 2020) (Fischer, J.) (denying release pending sentencing under 18 U.S.C. § 3143 because "the record shows that Defendant committed the cocaine trafficking offense in this case while he was on federal supervision ..., thereby demonstrating his propensity to engage in illicit conduct which poses a danger to the community even when under court-ordered conditions."); *see also Stevenson*, 2020 WL 3104943, at *4; *United States v. Oliver*, 2016 WL 1746853, at *8 (W.D. Pa. May 3, 2016) (Fischer, J.). "The statutory language as well as the legislative history [of the Bail Reform Act], unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Harris*, 2020 WL 7249339, at *4 (W.D. Pa. Dec. 8, 2020) (Ranjan, J.) (quoting *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985)).

*United States v. Bastianelli*, Crim. No. 17-305, 2022 WL 1120044, at *7 (W.D. Pa. Apr. 14, 2022). The combination of illegal possession of drugs and firearms presents a significant threat of violence, which Congress considered in imposing the potential penalties for those offenses. *See United States v. Pearson*, Crim. No. 22-271, 2023 WL 6216527, at *3 (W.D. Pa. Sept. 25, 2023) (noting the combination of drugs and firearms increases the risk of violence); *United States v. Cruse*, No. 13-157, 2018 WL 5281679, at *4 (W.D. Pa. Oct. 24, 2024) (Congress considers the seriousness of the offense when requiring mandatory minimum sentences).

The evidence presented at the detention hearing indicates that a search of Defendant's

residence uncovered approximately 34 bricks and 10 stamp bags of heroin or fentanyl, 28.6 grams of crack cocaine, 2.5 grams of psilocybin mushrooms, and a firearm, suggesting that Defendant was engaged in the dangerous distribution of drugs at the time of his apprehension. (Docket No. 80 at 7). The distribution of these substances negatively impacts the overall well-being of the community as individuals are exposed to hazardous, addictive, and often deadly substances. *See United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("violence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."). The danger accompanying Defendant's conduct is reflected in the potential penalties for same. At the supervised release violation, he faces revocation and a potential sentence of up to 2 years' incarceration by statute and 24 months under the guidelines. (Docket No. 60). As a result of the search, Defendant was also indicted at Criminal No. 24-260 and is subject to a term of imprisonment of at least five years' incarceration and a maximum term of forty years' incarceration if found guilty. (*See* Crim. No. 24-260, Docket No. 1; 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)). He is also potentially subject to a maximum term of life imprisonment if a statutory enhancement applies because of his previous convictions for possession with intent to deliver a controlled substance. (*See id.*; Crim. No. 18-305, Docket No. 42 at ¶¶ 33-34).

In addition, the U.S. Court of Appeals for the Third Circuit has recognized that "a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within the contemplation of the [Bail Reform] Act." *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979). A defendant's disregard for court-ordered conditions suggests non-compliance with the law in general, which threatens the safety of the community. *See United States v. Davis*, Crim. Nos. 17-271; 18-41, 2018

WL 2937537, at *4 (W.D. Pa. June 12, 2018) ("the most problematic aspect of Davis' case is his inability to adhere to court conditions and continued commission of offenses while on pretrial release.").

Here, less than a year after being released from incarceration, Defendant fled from police twice and appears to have been engaged in drug trafficking. (Docket No. 80). To date, court conditions and terms of imprisonment have done little to dissuade Defendant from engaging in illegal and dangerous conduct. He has a significant prior criminal history, including multiple prior convictions for possession with intent to deliver, receiving stolen property, disorderly conduct, and a series of firearm offenses. (*See* Docket No. 42 at ¶¶ 29-37).

Accordingly, the evidence presented supports the determination that Defendant's release on bond presents a threat to the safety of the community.

Next, the Court agrees with Magistrate Judge Eddy's conclusion that Defendant's flight from police, including twice in the month before his arrest on February 13, 2024, makes him a serious flight risk. (Docket No. 80 at 5-6). A defendant's past history of flight from police and non-appearance at judicial proceedings is a strong indicator that a defendant poses a serious risk of flight. *See United States v. Broadus*, Crim No. 19-87, 2020 WL 2307310, at *1 (M.D. Pa. May 8, 2020). Similarly, the potential penalties are directly relevant as the possibility of a lengthy term of incarceration may encourage a defendant to attempt an escape. *See United States v. Merlino*, Crim. A. No. 99-363, 1999 WL 557943, at *6 (E.D. Pa. July 30, 1999) ("[T]he fact that the charges carry a mandatory minimum of 10 years imprisonment with a maximum of life provides the defendant with all the incentive he needs to flee this jurisdiction."). Altogether, the Court considers a defendant's history, the possible penalties, and the facts of the instant conduct in determining

whether that defendant poses a serious risk of flight.

To that end, on January 11, 2024, Allegheny County Police attempted to stop Defendant as he was driving a vehicle with expired registration. (Docket No. 80 at 5). However, he fled from police and eventually escaped on foot. (*Id*.). Surveillance video of his escape shows that he reached towards his waistband area and appeared to remove an item out of his pocket in a manner consistent with possession of a firearm. (*Id*.). A few weeks later, on February 13, 2024, Defendant briefly fled police again immediately prior to his arrest. (*Id*. at 6). A review of Defendant's Pre-Sentence Investigation Report also reveals that he has failed to appear several times in state court on prior cases. (Docket No. 42 at ¶¶ 29-37). Finally, the potential penalties for the instant conduct are far greater than those penalties which Defendant has faced previously and enhance the risk of his flight from prosecution if he were to be released. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi). Given his history of flight from police and non-compliance with release conditions, the Court must conclude that Defendant is a serious flight risk.

As a final matter, the parties have also filed a series of status reports advising that scheduling a final revocation hearing is premature at this time as the underlying charges remain pending. (Docket Nos. 72; 74; 76; 78; 85). The Court notes that Defendant has been detained on the violation petition since his initial appearance on March 6, 2024, a period of approximately 11 months, which is well below the advisory guidelines range of 24 months' incarceration. (Docket No. 60). A non-jury trial is set for March 19, 2025 before Judge David Spurgeon in the Court of Common Pleas of Allegheny County to address the remaining state charges underlying the revocation proceeding. *See Comm. v. Peoples*, Docket No. CP-02-CR-0005520-2024.

For the aforementioned reasons, and after carefully considering all of the parties'

arguments and the evidence of record, this Court agrees with Magistrate Judge Eddy that Defendant has failed to meet his burden demonstrating by clear and convincing evidence that he is neither a flight risk nor a danger to the community. *See* Fed. R. Crim. P. 32.1(a)(6).

      ACCORDINGLY, IT IS HEREBY ORDERED that Defendant's Motion [81] is DENIED and he shall remain detained pending a final revocation hearing. Consistent with the Court's previous Order, the parties shall confer and file a Joint Status Report by March 31, 2025.

<u>*s/ Nora Barry Fischer*</u>
Nora Barry Fischer
Senior United States District Judge

Dated: February 28, 2025

cc/ecf: All Counsel of Record

8